## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| GoPro, Inc.<br><br>                              Plaintiff,<br><br>     v.<br><br>United States<br><br>                              Defendant. | Court No. 21-00058 |

## COMPLAINT

Plaintiff, GoPro, Inc. (hereinafter "Plaintiff" or "GoPro"), appears through its undersigned attorneys, and alleges the following as its Complaint in this action:

## JURISDICTION

1.      Plaintiff brings this action against Defendant the United States of America ("Defendant" or "United States") to contest the denial of 11 administrative protests by U.S. Customs and Border Protection ("CBP") under Section 515 of the Tariff Act of 1930, as amended (19 U.S.C. § 1515).  This Court therefore holds subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1581(a).

## STANDING AND TIMLINESS

2.      GoPro, Inc. is a corporation duly organized and existing under the laws of the State of Delaware and is the importer of record and party in interest as regards the merchandise in this action.  The company was formerly named "Woodman Labs, Inc."

3. GoPro paid all applicable duties, taxes, and fees, owed on liquidation of its entries, and instructed its customs broker to file protests on its behalf in order to seek duty refunds pursuant to section 514 of the Tariff Act of 1930, 19 U.S.C. § 1514.

4. The 11 protests (protest numbers 280117100042, 272016100381, 272016100380, 272015101106, 272015101105, 280915100291, 280915100201, 272015100437, 272015100436, 272015100227, and 272016101210) were filed timely to contest the tariff classification of GoPro's imported camera housings and to recover duties paid for imports of such imported camera housings, with interest accruals.

5. Said protests were denied by the government on August 19, 2020. Plaintiff filed a timely summons on February 14, 2021, within 180 days of the denial, and holds standing in this action pursuant to 28 U.S.C. §§ 2631(a) and 2636.

## STATEMENT OF FACTS

### Product Description

6. The subject merchandise consists of camera housings that are designed for use with GoPro's line of Hero "action cameras."

7. All of GoPro's camera housings are intended to enclose a single GoPro "Hero" digital video camera.

8. These camera housings consist of a ridged plastic shell that does <u>not</u> provide impact padding to protect the camera.

9. These camera housings include spring-operated buttons to control GoPro camera functions while the camera is encased.

10. The camera housings incorporate a flat, optically-coated glass lens plate for the GoPro camera to photograph through. The glass lens plate and glass coatings are susceptible to scratches and breakage.

11. The camera housing possesses no carrying handles. Clip receptors and adjustment knobs protrude at the bottom of the camera housing.

12. The angle of the camera housing, relative to the mount it clips to, may be adjusted by means of the screw-based adjustment knob.

13. The GoPro camera line evolved from the inventor's desire to film while surfing using a digital camera in a clear camera housing strapped to his wrist.

14. This purpose evolved into the broader concept of "action camera photography" in which a user may film while performing any number of activities, such as sky-diving, surfing, skateboarding, *etc.*

15. GoPro has pioneered action camera photography as a major new industry segment.

16. To accomplish "action camera photography" GoPro's "Hero" line of products are designed and marketed as a comprehensive system that includes digital cameras, camera housings, and numerous types of specialized mounts (sticky mounts, wrist mounts, helmet mounts, car mounts, chest mount, *etc.*)

17. Without the camera housings, the relevant GoPro camera systems cannot connect to the various mounts and the mounted action footage cannot occur.

18. All of the subject camera housings under are dedicated for exclusive use with the GoPro camera systems that they are designed for. The camera housings are not sold for any use that might be independent from the GoPro action camera system. These housings an integral component to their respective Hero camera.

19. We note that in recent iterations of the Hero camera system, GoPro has engineered the two functional pieces (camera and housing) together, such that Hero cameras now possess an "integrated waterhousing" whose functions merge with the camera itself. This tariff controversy therefore does not include these newer camera models. Housings for older Hero systems are however still imported for sale as replacements for lost or broken housings.

20. Many *other* companies have created *aftermarket* camera cases to store, organize, transport, and protect GoPro cameras together with their GoPro camera housings and mounts. These aftermarket camera cases do possess durable protective materials on the outside, and soft foam padding on the interior. Many of these cases do allow for organization of the photographic components (including batteries, memory cards, etc.) and do incorporate carrying handles. Since these aftermarket camera cases are solid and protective, they neither allow for activation of the camera controls, for photography while in these types of cases.

## Administrative History

21. On April 2, 2013, GoPro requested a tariff classification ruling concerning a representative camera housing called a "waterhousing" which is perhaps its most well-known and popular camera housing. As its name suggests, the waterhousing allows a GoPro camera to film underwater.

22. To make such underwater footage possible, GoPro waterhousings incorporate numerous feats of engineering, such as (a) waterproof protection to the camera to a depths of 50 meters by means of specially manufactured silicone gasket seals, (b) spring-activated buttons which are sealed against water, and resist activation pressures at depth, (c) an onboard heat dissipation system, (d) optical coatings that allow water to bead off the lens plate and create better

optics, and (e) a locking latch mechanism that resists water pressures at depths that might cause simpler latch mechanisms open.  The locking mechanism can be difficult for novice users to open.

23. In response, CBP issued a binding ruling, NY N240464, on May 3, 2013, which held that the waterhousing would be dutiable under subheading 4202.99.9000, HTSUS, which provides, in part, for other bags and containers, other, other, other." The rate of duty is 20%.

24. GoPro has declared its entries pursuant to NY N240464, but also instructed its broker to file administrative protests to protect its legal claims to refunds against all individually imported camera housings.

25. On September 24, 2013, GoPro submitted a request for reconsideration of NY N240464.  The request was returned to GoPro due to pending litigation in Otter Products, LLC v. United States, 70 F.Supp.3d 1281 (CIT 2015); Otter Products, LLC v. United States, 834 F.3d 1369 (Fed. Cir. 2016) (collectively, the "Otterbox Litigation").

26. The Otterbox Litigation, concerned the classification of call phone cases which CBP asserted were classified within heading 4202, HTSUS, which refers to "trunks, suitcases . . . camera cases… and similar containers."  See, Otter Prods., LLC v. United States, 70 F. Supp. 3d 1281.  The CIT granted Otterbox's motion for summary judgment, holding that the products should have been classified under subheading 3926.90.99.80, HTSUS, as articles of plastics with an *ad valorem* rate of 5.3%.  *Id.* at 1284, 1295.  On appeal, the Federal Circuit affirmed the CIT decision and held that heading 4202, HTSUS, requires the essential characteristic of products be to "organize, store, protect, and carry." See, Otter Prods., LLC, 834 F.3d at 1377-78.

27. The Federal Circuit affirmed that the products in question were not "containers" and were not similar to "containers" because the phone case only met one of the four unifying

characteristics to qualify as a "similar container" under heading 4202." *Id.* at 1378-80 (holding that the OtterBox case clearly protects, but does not organize, store, or carry).

28. In relevant part, the Federal Circuit held that a cell phone case cannot "organize" a single cell phone, and the OtterBox case was not a "case" within the meaning of heading 4202's "similar containers" provision. *Id.* at 1379. Further, the CAFC noted that none of the *eo nomine* "containers" allow for functionality while stored. *Id.* at 1379.

29. With the conclusion of the Otterbox Litigation, GoPro re-initiated its request for reconsideration of the waterhousing in May of 2017.

30. On July 5, 2018, CBP published a proposed ruling for public comment which included a factual description of the sample camera housing in its possession, together with the legal conclusion that the camera housings should be classified pursuant to GRI 1 and 6 within subheading 8529.90.86, HTSUS, which provides for "parts suitable for use solely or principally with the apparatus of headings 8525 to 8528: Other parts of articles of headings 8525 to 8527, except parts of cellular telephones: Other." Attached Exhibit A. (Customs Bulletin and Decisions, Vol. 52, No. 27, July 5, 2018).

31. GoPro submitted comments voicing its agreement with this position.

32. On pages 15-16, the proposed ruling stated:

> The subject Hero3 camera housing does not share the same defining characteristics as the products previously ruled by CBP as eo nomine "camera cases," cited supra. The products in the above-cited rulings enclose the camera and feature textile padding to protect the camera while it is being transported or stored, compartments or pockets to organize camera accessories, and shoulder straps or handles to facilitate transport. The Hero3 camera housing is distinguishable from the camera cases described above in that it does not organize any other components of the subject camera system (the Hero3 camera housing only holds a single electronic device which the CAFC in Otterbox II held did not serve an organizational purpose. See Otterbox II at 1290), nor does it provide a means of carrying the camera. The Hero3 may offer waterproof protection to the camera by means of sealed silicone gaskets, however its rigid molded plastic shell does not otherwise offer meaningful protection for the camera while stored. The Hero3 camera housing may not be

interchangeably used with other cameras on the market (other than later GoPro Hero model iterations, as noted above). Without the housing, the camera cannot function underwater as it is designed to do, nor can it connect to the mounting accessories needed when the user is performing an extreme activity such as sky diving, or surfing. All aspects of the Hero3 camera housing are engineered to further the specific purpose of utilizing a camera underwater or during an extreme activity. These characteristics substantially differ from those attributed to "camera cases" commonly found on the market, which merely offer a protective and organized place for the camera to be stored when not in use or when being transported to where the camera will be removed and used.

For these reasons, the subject merchandise is not a "camera case" of heading 4202, HTSUS. As we have determined that the subject Hero3 camera housing is not classifiable as an eo nomine camera case of heading 4202, HTSUS, we now consider whether it is classifiable as a "similar container" of that heading. . .

33. On page 16, the proposed ruling recognized that Avenues in Leather (concerning the *eo nomine* "briefcases" provision) had already decided the issue of whether the "organizing, storing, protecting, *and* carrying" criteria applied to *eo nomine* provisions.

The *Avenues* court, citing *Totes*, stated that the essential characteristics of the listed exemplars of heading 4202 are those of "organizing, storing, protecting, *and* carrying various items." [emphasis added] *See Avenues*, 178 F.3d at 1245, citing *Totes*, 69 F.3d at 498. In *Lon-Ron*, 334 F.3d at 1313, the CAFC held "[T[he essential characteristics of the articles falling within subheading 4202.32 are that they generally organize, store, protect, *or* carry items."

34. No official action was taken until May 8, 2019, when Customs withdrew its proposed revocation. Exhibit B.

35. HQ H287090 was then issued on May 13, 2019. Exhibit C. HQ H287090 affirmed NY N240464 and held that because the waterhousing "is a rigid molded plastic container specially shaped to house a camera, it falls squarely within the common commercial meaning of the tariff term "camera case" and is therefore *eo nomine* classified in heading 4202, HTSUS, as a named exemplar."

7

36. In HQ H287090 the agency removed its statements that characterized <u>Avenues</u> precedent as applicable to *eo nomine* items in heading 4202.

37. HQ H287090 instead asserts that the <u>Avenues</u> criteria is relevant only to an *ejusdem generis* analysis of "similar containers."

**COUNT I**

38. GoPro repeats and realleges paragraphs 1 through 37 hereof, as if fully set forth herein.

39. GoPro asserts that CBP's classification of its camera housings within subheading 4202.99.9000, HTSUS, as a "camera case" at the 20% rate of duty is incorrect.

40. Heading 4202 states in pertinent part:

Trunks, suitcases, vanity cases, attaché cases, **briefcases**, school satchels, spectacle cases, binocular cases, **camera cases**, musical instrument cases, gun cases, holsters **and similar containers**; . . .

[Emphasis added]

41. GoPro asserts that its camera housings are properly classified at the duty-free rate within subheading 8529.90.86, HTSUS, which provides for "parts suitable for use solely or principally with the apparatus of headings 8525 to 8528: Other parts of articles of headings 8525 to 8527, except parts of cellular telephones: Other."

42. Classification under the HTSUS is made in accordance with the General Rules of Interpretation (GRIs). GRI 1 provides that the classification of goods will be determined according to the terms of the headings of the tariff schedule and any relative section or chapter notes.

43. Note 2(b) to Section XVI, governs parts of Chapters 85, and mandates that a part of a camera of 8529: ("Other parts, if suitable for use solely or principally with a particular kind

of machine, . . . are to be classified with the machines of that kind or in heading . . . 8529 . . . as appropriate.)"

44. Note 2 to Chapter 39, HTSUS, provides, that the chapter excludes articles of Section XVI. ("This chapter does not cover: . . . (s) Articles of section XVI (machines and mechanical or electrical appliances")).

45. In CBP's proposed ruling of July 2018, "[t]he term "camera case" was understood as a construct of two words neither defined in the tariff nor in lexicographic sources.

46. In July 2018 proposed ruling CBP explained that it has classified "cases" and "camera cases" *eo nomine* under heading 4202, HTSUS in instances where the Avenues in Leather criteria were met.

47. CBP provided details of prior decisions relevant to "camera cases" such as: NY N237453, dated February 6, 2013 (where CBP classified a camera case designed to provide organization, storage, portability and protection to a digital camera, in subheading 4204.99.00, HTSUS); NY N208448, dated April 3, 2012 (where CBP classified a camera case in 4204.99.00, HTSUS, stating, "[T]he case is not considered to be a part of the camera as it does not contribute to the function of the camera itself"); NY N047863, dated January 8, 2009 (where CBP classified a camera case with a main compartment, mesh pocket, shoulder straps, and a hook-and-loop flap closure in subheading 4202.99.00, HTSUS).

48. Since CBP's final decision (a) does not comport with the body of its own rulings, and (b) withholds deference to judicial precedents, the final ruling in H287090 is neither persuasive, nor entitled to Skidmore deference.

49. While Heading 4202 covers "camera cases" *eo nomine*, the Federal Circuit precedent has stated that the scope of these exemplars (which the heading provides in a list together

not only for the purpose of pointing collectively, *ejusdem generis* ("similar containers.") but also individually as *eo nomine* terms) does all possess four key characteristics: organizing, storing, protecting, and carrying."  See, Otter Prods., LLC, 834 F.3d at 1374 (concerning the "and similar containers"); Avenues In Leather, Inc. v. United States (Avenues III), 423 F.3d 1326, 1331 (Fed. Cir. 2005) (concerning the *eo nomine* provision for "briefcases."); and Aves. in Leather v. United States ("Avenues II"), 317 F.3d 1399, 1402 (Fed. Cir. 2003)("[T]he common characteristic or unifying purpose of the goods in heading 4202 consist[s] of 'organizing, storing, protecting, and carrying various items."

50.     In Avenues III, the Federal Circuit upheld the Court of International Trade's rejection of CBP's argument that the articles at issue -- "Presentation Calcu–Folios" that "are zippered on three sides with an interior sleeve, possess one exterior open flat pocket and a number of small interior pockets, have a padded carrying handle fitted to the exterior spine, are constructed of paperboard covered with plastic foam and a vinyl/plastic exterior and interior, contain a solar-powered calculator, and have an interior three-ring metal binder permanently affixed to the spine" -- were, *eo nomine*, a form of briefcase, and, thus classifiable under Heading 4202.  Id. at 1331-32.

51.     The Court of International Trade had rejected the *eo nomine* classification as a form of "briefcase" through an analysis that assessed the articles at issue under the essential characteristics that united the listed exemplar products. id.

52.     Pursuant to this line of precedent, the Court must assess whether GoPro's camera housings are essentially for the "organizing, storing, protecting, and carrying various items" in order to find assess whether they are "camera cases" as defined in Heading 4202.  id.

53. Like the phone cases in the Otterbox Litigation, the GoPro waterhousings only contain one item (a camera). Nor are the camera housings principally designed protect, transport and store. Therefore, heading 4202 does not apply.

54. The *eo nomine* term also does not apply to items that are "substantially in excess of those within the common meaning of the term." See, Casio, Inc. v. United States, 73 F.3d 1095, 1098 (Fed. Cir. 1996 (citation and quotation omitted).

55. "In order to determine whether the subject article is classifiable within an *eo nomine* provision, [the court will] look to whether the subject article is merely an improvement over or whether it is, instead, a change in identity of the article described by the statute." See, CamelBak Prods., LLC v. United States, 649 F.3d 1361, 1365 (Fed. Cir. 2011).

56. GoPro's camera housings are not mere improvements on "camera cases." The camera housings represent an entirely different type of functional apparatus, one that is used integrally with the GoPro cameras to facilitate the act of action photography. Indeed, in later current generations of Hero cameras, the housing is integrated into the camera itself. These camera housings are therefore "substantially in excess" of mere "cases"/"containers."

57. Heading 8529, HTSUS, provides for, *inter alia*, "parts" suitable for use solely or principally with digital cameras of heading 8525.

58. A part "is an integral, constituent, or component part, without which the article to which it is to be joined, could not function as such article." United States v. Willoughby Camera Stores, Inc., 21 C.C.P.A. 322, 324, 1933 WL 1887 (1933).

59. Willoughby Camera dealt with an imported tripod that was not solely used with cameras, but was also "used for various other purposes." *Id.* at 324. The tripod "perform[ed] its separate function without loss of any of its essential characteristics" when used independently of

the camera. It was a "distinct and separate commercial entity" from the camera. *Id.* at 325. The court held that the tripod was not a "part."

60.     The facts in Willoughby Camera are considerably different, since the GoPro camera housings serves no function or purpose that is independent of the GoPro camera system. The camera housings are designed, marketed, and sold to be attached to the GoPro camera system.

61.     In Bauerhin Technologies Ltd. Partnership v. U.S., 110 F.3d 774, 779 (Fed. Cir. 1997), the imported canopies dedicated solely for use with child safety seats were neither designed nor sold to be used independently and were held to be "parts" of car seats.

62.     Furthermore, a "'part' is 'an essential element or constituent; integral portion which can be separated, replaced, etc.' Webster's New World Dictionary 984 (3d College Ed. 1988). Thus, based on the common meaning, the term "part," . . . must have a direct relationship to the primary article, rather than to the general activity in which the primary article is used." Rollerblade, Inc. v. United States, 282 F.3d 1349, 1353 (Fed. Cir. 2002).

63.     Unlike Rollerblade, where the article at issue -- in-line roller skating protective gear, such as knee pads, elbow pads, and wrist guards -- "protects the wearer from injuries related to an activity using the article" and "do not attach to or contact in any way the subheading article, namely roller skates[,]"

64.     GoPro camera housings bear no relationship to the camera operator and hold a direct and essential relationship with the GoPro camera system. *See*, Id., 282 F.3d at 1353-54.

65.     Heading 8529, HTSUS, is a heading within Section XVI of the HTSUS; therefore, Note 2 of that section further guides classification of this article. As the subject camera housings are not included in any other headings of Chapter 84 or 85, and are specifically made for GoPro

cameras (which are classified in heading 8525, HTSUS), the tariff classification of the subject camera housing is proper in subheading 8529.90.86, HTSUS, as per Section XVI, Note 2(b).

66. The protest denials in this action were therefore not made in accordance with law and fact.

67. In accordance with law and fact, and by application of GRI 1, GoPro camera housings ar e properly classified under Heading 8529, HTSUS.  By application of GRI 6, these products are classified under subheading 8529.90.86, HTSUS, which provides for "[P]arts suitable for use solely or principally with the apparatus of headings 8525 to 8528: Other parts of articles of headings 8525 to 8527, except parts of cellular telephones: Other."

68. The applicable rate of duty is free.

## Count II

1. GoPro repeats and realleges paragraphs 1 through 37 hereof, as if fully set forth herein.

2. Alternatively, GoPro contends that these camera housings may be classified under subheading 3926.90.99, HTSUS, which provides for "[O]ther articles of plastics and articles of other materials of headings 3902 to 3914: Other" at the applicable rate of duty of 5.3% *ad valorem*.

## PRAYER FOR RELIEF

WHEREFORE, GoPro prays for the entry of a judgment

(1) Finding that GoPro camera housings properly classified under subheading 8529.90.86, HTSUS (or, if applicable, 3926.90.99, HTSUS),

(2) finding that Customs erroneously denied the 11 protests (protest numbers 280117100042, 272016100381, 272016100380, 272015101106, 272015101105,

        280915100291, 280915100201, 272015100437, 272015100436, 272015100227, and 272016101210.

(3)     ordering Customs to reliquidate all associated entries and to calculate duties based on the classification of the goods as supported by the reasons set forth *supra*,

(4)     ordering the refund of all duties paid in excess, together with interest accruing thereon, and

(5)     granting other relief as the Court may deem necessary and proper.

Dated: February 14, 2021

                                            Respectfully submitted,

                                            <u>/s/ Matt Nakachi</u>

                                            Matt Nakachi, Esq.

                                            JUNKER & NAKACHI, P.C.
                                            One Market Street
                                            Spear Tower, Suite 3600
                                            San Francisco, CA 94105
                                            (415) 498-0070
                                            matt@tradelawcounsel.com

                                            *Counsel for Plaintiff, GoPro, Inc.*